***********
Upon review of all of the competent evidence of record with references to the errors assigned and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, the Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. The employer/employee relationship existed between the named employee and named employer on or about February 1, 2000, the date of the injury.
3. The employer, USF Holland, Inc., is self-insured. The servicing agent is Constitution State Service Company.
4. The parties originally stipulated to an average weekly wage for the employee of $770.40; however, subsequent to the hearing, the parties finalized their stipulation and agreed that the correct average weekly wage is $737.35.
5. Defendant admits that the injury arose out of and in the course of employment and is compensable. The issue before the Commission concerns the percentage of permanent partial impairment to plaintiff's left arm.
6. The parties stipulated into evidence:
Stipulated Exhibit #1 — Consisting of plaintiff's medical records from Dr. Edwin Cooper; Renoir Memorial Hospital, Raleigh Hand Center; Tremont Medical Center; North Carolina Industrial Commission forms, and a letter from the insurance adjuster to Dr. Edwards.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. On February 1, 2000, plaintiff was working as a truck driver for defendant-employer when he sustained an admittedly compensable injury to his left hand and arm.
2. Plaintiff was initially treated at Tremont Medical Center and diagnosed with a contused left wrist and ulnar nerve neuropraxia. Plaintiff's symptoms continued and worsened, so he returned to Tremont Medical Center on February 16, 2000. Plaintiff was referred to an orthopaedic surgeon.
3. Plaintiff was examined by Dr. George Edwards, an orthopedic surgeon, on February 16, 2000. Dr. Edwards diagnosed carpal tunnel syndrome versus other isolated nerve entrapments and recommended additional testing which showed abnormalities in the carpal tunnel and left cubital tunnel syndrome. Dr. Edwards recommended surgery to treat both of these conditions.
4. Plaintiff declined to undergo the surgery for fear that it would cause him to miss time from work or that his condition would worsen or not improve.
5. Plaintiff did not return to Dr. Edwards until August 2002. At that time, Dr. Edwards noted that plaintiff's symptoms persisted in the left hand with numbness predominately in the ulnar nerve distribution and tenderness about the elbow. It was noted that plaintiff was able to perform his job, but had difficulty with more strenuous activities and is unable to perform some other non-work activities. Dr. Edwards noted that plaintiff was in McGowan Stage II and could have surgery if his symptoms dictate. Further, plaintiff had not yet reached maximum medical improvement. Dr. Edwards declined to rate plaintiff with a permanent partial impairment at that time.
6. Plaintiff was examined for an independent medical evaluation by Dr. Edwin Cooper, orthopaedic surgeon, on October 30, 2002. Dr. Cooper performed extensive testing and diagnosed plaintiff with post traumatic ulnar nerve palsy of the left hand and arm and post traumatic left carpal tunnel syndrome. Dr. Cooper noted that there was a fifty percent (50%) decrease in the function of the ulnar nerve and ten percent (10%) decrease in the median nerve deficit. By utilizing the North Carolina Industrial Commission combined tables, Dr. Cooper determined that the plaintiff had a thirty-four percent (34%) permanent partial impairment to the left hand, which translates to a thirty percent (30%) permanent partial impairment to the left arm. Plaintiff described Dr. Cooper's examination as the "most thorough exam he had ever had."
7. In February 2003, Dr. George Edwards assigned plaintiff a permanent partial impairment rating of twelve percent (12%) to the left arm. Dr. Edwards had not examined or treated plaintiff since August 2002.
8. At his deposition, Dr. Edwards agreed that if on October 30, 2002, when Dr. Cooper evaluated plaintiff, plaintiff had a fifty percent (50%) decrease in the function of the ulnar nerve and a ten percent (10%) deficit in his median nerve, plaintiff would be entitled to the ratings assigned by Dr. Cooper.
9. Plaintiff returned to work shortly after his injury and has continued to work with the defendant-employer. Plaintiff has some difficulties with functioning in the left arm, but has adapted to perform his essential job duties.
10. Plaintiff's average weekly wage at the time of injury was $737.35, yielding a compensation rate of $491.59.
11. Greater weight is assigned to Dr. Cooper's rating of thirty percent (30%) to the left arm, considering his thorough examination of plaintiff and the weakness and functional deficits Dr. Cooper's testing revealed. In addition, Dr. Edwards had not examined plaintiff for six months at the time he rated plaintiff.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment with defendant-employer on February 1, 2000, resulting in left ulnar nerve palsy and left carpal tunnel syndrome. N.C. Gen. Stat. § 97-2(6).
2. On February 1, 2000, plaintiff's average weekly wage was $737.35, yielding a compensation rate of $491.59. N.C. Gen. Stat. § 97-2(5).
3. There is no dispute regarding any past or ongoing temporary total disability benefits to plaintiff or medical treatment owed the plaintiff. N.C. Gen. Stat. §§ 97-29; 97-25.
4. As the result of the compensable injury by accident, plaintiff has a thirty percent (30%) permanent partial impairment of his left arm and is entitled to payment by defendant of 72 weeks of permanent partial disability compensation, payable at the rate of $491.59 per week. N.C. Gen. Stat. § 97-31(13).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to attorney's fees approved below, defendant shall pay to plaintiff permanent partial disability compensation for his thirty percent (30%) permanent partial impairment of the left arm at the rate of $491.59 per week for 72 weeks. All compensation that has accrued shall be paid in one lump sum.
2. A reasonable attorney's fee of twenty-five (25%) of the compensation awarded to plaintiff in Paragraph 1 of this AWARD is hereby APPROVED and shall be paid directly to plaintiff's counsel in one lump sum.
3. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury of February 1, 2000.
4. Defendant shall pay the costs.
This the 29th day of December 2004.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER
LKM/mlb